IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BARBARA DENISE FLOYD,<br>    Plaintiff, | §<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. 3:24-CV-02546-X |
| | § | |
| COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br>    Defendant. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to provisions under Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Barbara Denise Floyd ("Floyd") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). On July 15, 2021, Floyd filed her application, alleging that her disability began on May 21, 2021. (Transcript ("Tr.") 17; *see* Tr. 179-98.) After her application was denied initially and on reconsideration, Floyd requested a hearing before an administrative law judge ("ALJ"). (Tr. 17; *see* Tr. 55-88, 95-133.) On October 20, 2023, the ALJ held a telephone hearing and, on February 27, 2024, found that Floyd was not disabled within the meaning of the SSA. (Tr.

14-54.) Floyd then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 177-78.) On August 16, 2024, the Appeals Council denied Floyd's request, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-6.) Floyd subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. §§ 401-434, and SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381-1385, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment, or combination of impairments, meets or equals an

impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404 Subpt. P, App. 1. *See* 20 C.F.R. §§ 404.1520(a)(iii), (d), 416.920(a)(iii), (d).[1]  Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  20 C.F.R. §§ 404.l520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  *Id.* §§ 404.l520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197- 98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*  If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

     A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam).  Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUE

In her brief, Floyd presents one issue: Whether the ALJ properly assessed Plaintiff's subjective complaints of pain. (Plaintiff's Brief ("Pl.'s Br.") at 5, 9-17.)

### IV.   ALJ DECISION

As set forth above, in a decision dated February 27, 2024, the ALJ concluded that Floyd was not disabled within the meaning of the SSA. (Tr. 17-26.) At Step One, the ALJ found that Floyd met the insured status requirement of the SSA through December 31, 2027, and had not engaged in substantial gainful activity since May 21, 2021, the alleged onset date of her disability. (Tr. 19.) At Step Two, the ALJ found that Floyd had the following severe impairments: "degenerative disc disease; osteoarthritis; obesity; carpal tunnel syndrome, and mild asthma as a residual of her pulmonary embolism." (Tr. 20.) Thereafter, at Step Three, the ALJ determined that Floyd did not have an impairment or combination of impairments that met or was medically equivalent to the severity of any impairment in the Listing. (Tr. 20-21.)

As to Floyd's RFC, the ALJ stated:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.9678(b) except with occasional postural activities; no climbing of ladders, ropes, or scaffolds; occasional overhead reaching; requires the

4

      opportunity to sit from a standing position every half hour, and likewise stand from a seated position every half hour without being off task.

(Tr. 21 (emphasis omitted).) Based upon this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded that Floyd was able to perform her past relevant work as a caregiver. (Tr. 25-26.) Consequently, the ALJ found that Floyd was not disabled as defined in the SSA from May 21, 2021, through the date of the decision. (Tr. 26.)

## V.    DISCUSSION

In her brief, Floyd argues that the ALJ erred in evaluating Floyd's subjective complaints because the ALJ "did not adequately explain why Plaintiff's subjective complaints were deemed inconsistent with the evidence of record, and the evaluation of the evidence does not provide a clear path to the reasoning." (Pl.'s Br. at 10 (emphasis omitted).) Specifically, Floyd claims that the ALJ simply recited the medical evidence of record without discussing the specifics of any alleged inconsistencies. (*See* Pl.'s Br. at 11-12; Plaintiff's Reply ("Pl.'s Reply") at 1.) Floyd further contends that the medical evidence "highly supports [her] testimony." (Tr. 24; Pl.'s Br. at 14.) In response, the Commissioner argues there is substantial evidence that the ALJ properly considered Floyd's subjective complaints. (*See* Defendant's Brief ("Def.'s Br.") at 2.)

When evaluating a claimant's subjective complaints, the ALJ first considers whether a medically determinable impairment exists that could reasonably be expected to produce the claimant's pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Second, once an impairment is established, the ALJ then assesses the symptoms' intensity, persistence, and limiting effects on the claimant's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3P, 2017 WL 5180304, at *3.

In evaluating a claimant's subjective complaints, the ALJ considers multiple factors, including: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3P, 2017 WL 5180304, at *7-8. "However, neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). Namely, an administrative decision is "sufficiently specific" when it "amply reflects" the ALJ's awareness and consideration of the regulatory factors. *Id.*

As to Floyd's subjective complaints, the ALJ, citing to 20 C.F.R. §§ 404.1529 and 416.929, first set forth the two-step process in considering a claimant's subjective complaints. (Tr. 21-22.) Then, the ALJ stated:

> The claimant testified she works with her sister 20 hours per week and earns $10.50 per hour. She testified her sister has breast cancer, and she helps her five days per week for half a day. She cooks for her, cleans for her (including vacuuming), assists with medication, assists with bathing, grocery shops for her, takes out the trash, and performs regular home health job duties. She reported she cannot perform her job as a data entry clerk because she cannot stand sufficiently to do this job; she was required to walk up the stairs. She has pain in her legs and feet, and her feet swell for weeks at a time. She takes blood thinner and elevates her feet at night, but they swell during the day while she is up. She tries to elevate them when she is sitting. . . . She has pain when reaching above her head, she cannot lift more than 5 pounds, and she is in pain when kneeling and stooping.
>
> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to

cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

There is no persuasive evidence the claimant's impairments impede her ability to perform a reduced range of light work on a consistent and sustained basis. . . .

(Tr. 22.)  Subsequently, the ALJ stated:

The [ALJ] notes the claimant's subjective complaints of pain are out of proportion to the objective medical evidence.  The claimant has a history of chronic back pain that worsened in October 2021 following an assault, which resulted in L4 compression fracture and right first metacarpal fracture.  The claimant did not require surgery, but she did receive an [epidural steroid injection].  Although she continues to complain of pain, the diagnostic studies do not support a surgical lesion or nerve root compression.  The record contains no objective signs of an incapacitating impairment, such as muscle atrophy or grossly abnormal neurological deficits.

Furthermore, although diagnose[d] with severe osteoarthritis in the left knee, she has had essentially no treatment and no symptom complaints.  She does not have an antalgic gait and surgery has not been recommended.  Moreover, she has had no treatment for her complaints of shoulder pain.

Moreover, the [ALJ] notes the claimant is able to cook meals, do household chores, provide bathing assistance, and shop in stores.

In reaching a conclusion as to the claimant's physical and residual functional capacity, the [ALJ] has considered the objective findings on the claimant's physical examinations.  The [ALJ] also notes the claimant performs activities throughout the day as a caregiver that [are] inconsistent with the inability to perform a reduced range of light work. Considering all of the medical evidence, and giving the claimant the benefit of all doubt as to her subjective complaints, the [ALJ] find[s] the claimant is limited to a restricted range of light work, given the combination of his impairments.  The [ALJ] has also provided postural and reaching limitations, which are specific to her symptoms. . . .

(Tr. 24-25.)

As set forth above, Floyd argues that the ALJ improperly assessed her subjective complaints of pain.  (Pl.'s Br. at 12-13.)  The Court disagrees, noting that, "[w]hen considering medical evidence relative to a claimant's subjective complaints, the ALJ may discredit the

claimant's complaints of pain [so long as the ALJ] carefully weigh[s] the evidence and articulate[s] the reasons for doing so." *Guidry v. Comm'r of Soc. Sec.*, No. 6:23-CV-01742, 2025 WL 1119267, at *4 (W.D. La. Mar. 31, 2025) (citing *Smith v. Astrue*, 914 F. Supp. 2d 764, 787 (E.D. La. 2012)). In this case, the ALJ began her analysis regarding Floyd's subjective complaints by setting forth and citing the regulations governing symptom evaluation, acknowledging its relevance to her determination. (Tr. 21 (citing §§20 C.F.R. 404.1529, 416.929.)  Thereafter, the ALJ, *inter alia*, summarized evidence relevant to five of the seven factors listed in the regulation. (Tr. 21-25; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).)

As to claimant's daily activities, the ALJ noted that Floyd worked for her sister as a paid caregiver, performing daily tasks such as cooking, cleaning, shopping, and undertaking "regular home health job duties." (Tr. 22.) As to the location, duration, frequency, and intensity of pain or other symptoms, the ALJ reiterated Floyd's testimony and the medical evidence indicating Floyd experienced pain (and sometimes swelling) in her, *inter alia*, feet, hands, shoulder, low back, legs as well as when reaching overhead. (Tr. 20-24) As to information related to Floyd's medications, the ALJ noted, *inter alia*, that Floyd: (1) was prescribed over-the-counter as well as prescription pain medication as well as muscle relaxers at times (Tr. 22-23); (2) took Flexeril and Gabapentin for her lower back pain and, according to Floyd, the medication eased her pain (Tr. 24); (3) took Lisinopril for hypertension but that there was no evidence that Floyd had any symptoms or complaints regarding this non-severe impairment  (Tr. 20, 22.) As to treatment, other than medications, the ALJ noted other treatments Floyd underwent, including: (1) an epidural steroid injection on February 28, 2023; (2) a prescription for a lumbar corset; and (3) shoe inserts for foot pain. (Tr. 23-24) As to any other factors concerning Floyd's functional limitations and restrictions due to pain, the ALJ acknowledged Floyd's functional limitations, emphasizing that postural and

reaching limitations were included in the RFC to specifically account for her symptoms. (Tr. 24-25.)

In addition, the ALJ articulated legitimate reasons for her determination that Floyd's subjective complaints were not entirely consistent with medical and other evidence in the record. (Tr. 21-26.) Moreover, the ALJ sufficiently indicated the persuasiveness and weight given to Floyd's subjective complaints and also incorporated some limitations into the RFC determination to account for her subjective complaints (Tr. 21-25). *See Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008)). As the ALJ explained, "[i]f the claimant has the [RFC] to do her past relevant work, the claimant is not disabled." (Tr. 19.) Relying on the VE's testimony, the ALJ reasonably concluded that Floyd could still perform her past relevant work as a caregiver. (Tr. 26.)

While Floyd, quoting *Bradley v. Kijakazi*, argues that "'[a]n ALJ may not simply summarize the record evidence and summarily conclude that an opinion is persuasive'" (Pl.'s Reply at 4), the ALJ in this case did not provide such a "cookie-cutter 'explanation'" in analyzing Floyd's subjective complaints. *Bradley*, No. 3:22cv277-RP, 2023 WL 4278793, at *3 (N.D. Miss. June 29, 2023). In *Bradley*, the ALJ recited the ALJ's own previous summaries of the medical evidence "*verbatim*," providing "no logic bridge between the ALJ's rote recitation of medical evidence and his finding that [the nurse practitioner's] opinion [was] unpersuasive." *Id.* Thus, the court in *Bradley* found that such analysis was insufficient.[2] *See id.*

In comparing this case to *Bradley*, the Court first notes that the issue in *Bradley* revolved around proper consideration of a medical opinion and not, as in this case, the assessment of a Plaintiff's subjective complaints of pain. *Id.* at *2-3. Moreover, even assuming *Bradley* is relevant, the ALJ in this case properly weighed the strengths and weaknesses of the evidence of

---

[2] The Court notes that the court in *Bradley* ultimately found that such error was harmless error. *Bradley*, 2023 WL 4278793, at *3-4.

9

record and drew reasonable conclusions on their persuasiveness. (Tr. 21-26.) In sum, the ALJ's findings regarding Floyd's subjective complaints of pain were "sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." *Salgado*, 271 F. App'x at 462. Thus, the ALJ did not err, and remand is not required as to this issue.

## RECOMMENDATION

Based on the foregoing, it is recommended that the Commissioner's decision be **AFFIRMED.**

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until October 6, 2025, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September 22, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

11